UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUSAN J. BALDWIN,

        Plaintiff,

    v.

GODDARD RIVERSIDE COMMUNITY
CENTER,

        Defendant.

---

: 11-CV-7591 (PGG)(HP)
: **ORAL ARGUMENT REQUESTED**

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
(212) 692-1000
Attorneys for Defendant
Goddard Riverside Community Center

# TABLE OF CONTENTS

                                                                                                                  **Page**

ARGUMENT ..................................................................................................................... 1

I.     PLAINTIFF CANNOT DEFEAT SUMMARY JUDGMENT WITH THE SUBMISSION OF INADMISSIBLE EVIDENCE OR A CONTRADICTORY DECLARATION, NOR CAN SHE RAISE NEW CLAIMS IN HER OPPOSITION ................................................................................................ 2

II.    PLAINTIFF CANNOT IGNORE HER DEPOSITION TESTIMONY AND THE EVIDENCE, WHICH PRECLUDE A FINDING OF CAUSATION ................. 4

III.   THERE IS NO EVIDENCE OF PRETEXT .................................................... 9

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)..........................................................................................................4

Ashton v. Pall Corp.,
32 F. Supp. 2d 82 (E.D.N.Y. 1999) ..................................................................................8

Bennett v. Health Management Systems, Inc.,
92 A.D.3d 29 (1st Dep't 2011) ..................................................................................... 1-2

Bickerstaff v. Vassar College,
196 F.3d 435 (2d Cir. 1999)..............................................................................................3

Crawford-Mulley v. Corning Inc.,
194 F. Supp. 2d 212 (W.D.N.Y. 2002)............................................................................10

Curcio v. Roosevelt Union Free School District,
2012 WL 3646935 (E.D.N.Y. Aug. 22, 2012)...................................................................6

Govan v. Campbell,
289 F. Supp. 2d 289 (N.D.N.Y 2003)................................................................................1

Guzman v. Macy's Retail Holdings, Inc.,
2010 U.S. Dist. LEXIS 29544 (S.D.N.Y. Mar. 29, 2010) .................................................5

Hawana v. City of New York,
230 F. Supp. 2d 518 (S.D.N.Y. 2002)...............................................................................4

Hollander v. American Cyanamid Co.,
172 F.3d 192 (2d Cir. 1999)..............................................................................................3

Ibok v. Securities Industry Automation Corp.,
369 Fed. Appx. 210 (2d Cir. 2010).................................................................................10

Knight v. New York City Hous. Auth.,
2007 WL 313435 (S.D.N.Y. Feb. 2, 2007).......................................................................2

Littman v. Firestone Tire & Rubber Co.,
709 F. Supp. 461 (S.D.N.Y. 1989) .................................................................................10

Loucar v. Boston Mkt. Corp.,
294 F. Supp. 2d 472 (S.D.N.Y. 2003).............................................................................10

Lunts v. Rochester City Sch. Dist.,
2013 U.S. App. LEXIS 5437 (2d Cir. Mar. 20, 2013) .................................................................. 4

McLee v. Chrysler Corp.,
109 F.3d 130 (2d Cir. 1997) ....................................................................................................... 10

Melman v. Montefiore Medical Center,
98 A.D.3d 107 (1st Dep't 2012) ........................................................................................... 1, 7, 9

Meyers v. Medco Health Solutions, Inc.,
2012 WL 4747173 (S.D.N.Y. Oct. 4, 2012) ................................................................................ 9

O'Sullivan v. New York Times,
37 F. Supp. 2d 307 (S.D.N.Y. 1999) ............................................................................................ 9

Redd v. New York State Division of Parole,
2012 U.S. Dist. LEXIS 186704 (E.D.N.Y. Dec. 20, 2012) ......................................................... 7

Rojas v. Roman Catholic Diocese of Rochester,
660 F.3d 98 (2d Cir. 2011) ........................................................................................................... 1

Sotomayor v. City of New York,
862 F. Supp. 2d 226 (E.D.N.Y. 2012) ......................................................................................... 1

Thomas v. Egan,
1 Fed. Appx. 52 (2d Cir. 2001) .................................................................................................... 4

Tomlins v. Wappinger Falls Zoning Board of Appeals,
812 F. Supp. 2d 357 (S.D.N.Y. 2011) ......................................................................................... 6

U.S. Info. Sys. v. Int'l Bhd. of Elec. Workers Local No. 3,
2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006) ............................................................................... 2

Woodman v. WWOR-TV, Inc.,
293 F. Supp. 2d 381 (S.D.N.Y. 2003), aff'd, 411 F.3d 69 (2d Cir. 2005) ................................... 3

**Other Authorities**

Fed. R. Civ. P. 56 ..................................................................................................................... 1-3

Local Civ. Rule 56.1 ................................................................................................................ 1-2

Defendant respectfully submits this reply memorandum of law in further support of its motion for summary judgment to dismiss Plaintiff's meritless claims against it.

## ARGUMENT

In the face of Plaintiff's own deposition testimony and undisputed facts establishing that Plaintiff's termination in October 2010 had nothing to do with her protected activity from 2005 to 2009 (1 ½ to 5 years before she was fired, see 56.1 ¶ 14-17, 19, 23-33), Plaintiff attempts to drown out the record evidence by simply asserting her termination was retaliatory (or that an inference may be drawn out of whole cloth) with no supporting admissible evidence. Upon dissecting Plaintiff's arguments in light of the evidence, it is clear her claims cannot survive.[1]

To prevail on a retaliation claim, it remains Plaintiff's burden to establish a causal connection between her protected activity and the adverse action. Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 (2d Cir. 2011); see also Sotomayor v. City of New York, 862 F. Supp. 2d 226, 261-62 (E.D.N.Y. 2012). Even under the more liberal NYCHRL standard, Plaintiff must still prove her claim under the familiar McDonnell-Douglas standard or prove that retaliation was a motivating factor for her termination. See Melman v. Montefiore Medical Center, 98 A.D.3d 107, 131 (1st Dep't 2012) (granting summary judgment to defendant on plaintiff's NYCHRL claims and stating "plaintiff failed to come forward with evidence from which a jury reasonably could find that the challenged actions were motivated, either in whole or in part, by his age"); Bennett v. Health Management Systems, Inc., 92 A.D.3d 29, 39 (1st Dep't

---

[1] Plaintiff specifically admits the following 56.1 ¶¶1-9, 11-15, 19, 21, 23-24, 26-28, 30, 32-35, 39, 42-45, 48, 50-51, 54-55, 60, 63-68, 70-72. While she purports to "deny" the remaining paragraphs, her "denials" are either conclusory denials without any support in the record, or instances where she opts not to explicitly admit the facts but instead responds with commentary and argument without any admissible evidence or proper citation to the record. The Court must reject these "denials" or non-admissions and deem them admitted. See Local Civ. Rule 56.1(d); Fed. R. Civ. P. 56(c)(2); Govan v. Campbell, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003); see also Def. Evid. Objs. and Defendant's Response to Plaintiff's 56.1 Statement.

1

2011) (granting summary judgment to defendant on plaintiff's NYCHRL claims and noting "where a defendant... has produced evidence that justifies its adverse action...the <u>plaintiff may not stand silent</u>. The plaintiff must either counter the defendant's evidence by producing pretext evidence (or otherwise), or show that...the defendant was motivated at least in part by discrimination") (emphasis added). Thus, whether Plaintiff's claims are analyzed under McDonnell Douglas or mixed-motive, Plaintiff still must present admissible evidence connecting her alleged protected activity to her termination. She has not done so.

I. **PLAINTIFF CANNOT DEFEAT SUMMARY JUDGMENT WITH THE SUBMISSION OF INADMISSIBLE EVIDENCE OR A CONTRADICTORY DECLARATION, NOR CAN SHE RAISE NEW CLAIMS IN HER OPPOSITION**

Local Civil Rule 56.1 requires that each numbered paragraph in Defendant's Statement of Undisputed Facts be deemed admitted unless "specifically controverted by a correspondingly numbered paragraph" and "followed by citation to evidence which would be admissible" in accordance with Fed. R. Civ. P. 56(e). See Local Civ. Rule 56.1(b)-(d). Instead of offering anything in the way of admissible evidence, Plaintiff simply makes allegations and sweeping conclusions without regard to the evidence. In the overwhelming majority of instances, Plaintiff's 56.1 Response repeatedly fails to cite to any evidence which could controvert the facts cited in Defendant's 56.1 Statement, choosing instead to offer commentary designed to diminish the impact of her own admissions. Defendant's factual statements should therefore be deemed admitted. <u>Knight v. New York City Hous. Auth.</u>, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007) (holding that Defendant's factual statements were deemed admitted where Plaintiff failed to controvert them with citations to the record); <u>U.S. Info. Sys. v. Int'l Bhd. of Elec. Workers Local No. 3</u>, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006) ("A non-moving party cannot create a factual dispute merely by denying a movant party's factual statement; rather, the non-moving party must identify controverting evidence for the court.").

Nor can Plaintiff survive summary judgment by asserting subjective beliefs and relying on conjecture, conclusory argument, or her own declaration statements for which she lacks any personal knowledge. Plaintiff's inability to show that there are any material facts in dispute, after extensive discovery, makes it abundantly clear that summary judgment should be granted.

Plaintiff's attempt to avoid summary judgment by relying upon the improper Declarations of Mercedes Rankin and Arthur Sheppard (neither of whom offer any admissible, relevant evidence) and her own improper Declaration (in which she recounts her theories of this case without regard for her own prior deposition testimony, makes sweeping conclusory arguments and bald factual assertions about which she could not possibly have had personal knowledge, and improperly relies on hearsay), is similarly improper. It is of course well settled that conclusory allegations about which Plaintiff has no basis for personal knowledge, such as those in Plaintiff's Declaration, are wholly insufficient to create an issue of fact. See Woodman v. WWOR-TV, Inc., 293 F. Supp. 2d 381, 387 (S.D.N.Y. 2003) ("Affidavits submitted to prove a factual dispute must be admissible in themselves and must contain evidence that would be presented in an admissible form at trial."), aff'd, 411 F.3d 69 (2d Cir. 2005); Fed. R. Civ. P. 56(e). Indeed, the Second Circuit could have been speaking about this case when it held that "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar College, 196 F.3d 435, 451-52 (2d Cir. 1999); see also Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999) ("[a] court may therefore strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements"). Nor is Plaintiff permitted to contradict her deposition testimony.

3

Finally, Plaintiff cannot now introduce new claims – such as her claim that her job responsibilities were diminished to the point of being "grunt work," or the alleged existence of an ongoing pattern of retaliation creating a hostile work environment. Thomas v. Egan, 1 Fed. Appx. 52, 54 (2d Cir. 2001) (because "[a] claim must be set forth in the pleadings, in order to give [defendant] fair notice of the nature of the plaintiff's claim…it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion"); Hawana v. City of New York, 230 F. Supp. 2d 518, 534 (S.D.N.Y. 2002)("The plaintiff cannot raise new claims in response to a motion for summary judgment").

Because Plaintiff's opposition relies almost entirely on conclusory or speculative assertions rather than admissible evidence, summary judgment must be granted on this ground alone. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), Lunts v. Rochester City Sch. Dist., 2013 U.S. App. LEXIS 5437, at *2-3 (2d Cir. Mar. 20, 2013) ("It is insufficient to rely on conclusory allegations or unsubstantiated speculation to defeat a motion for summary judgment.").

## II. PLAINTIFF CANNOT IGNORE HER DEPOSITION TESTIMONY AND THE EVIDENCE, WHICH PRECLUDE A FINDING OF CAUSATION

Plaintiff's has not presented any evidence of causation between her protected activity and her October 10, 2010 termination. As set forth in Defendant's moving papers, the closest protected activity to Plaintiff's October 10, 2010 termination is her June 2009 deposition in the Robles case – an approximate 16 month gap that is too big for Plaintiff to bridge. The same holds true for the gap between termination and the 2005 protected activity concerning Russian tenants (4 year gap); helping Plaintiff find an attorney in 2007/2008 (2-3 years)[2], and the July

---

[2] It is dubious at best that this constitutes protected activity in the first place and Plaintiff has failed to cite to any authority that recommending an attorney is protected activity.

4

2008 revisions to the insurance investigator's statement (2 years). Temporal proximity is a relevant consideration in NYCHRL claims and "claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation." Guzman v. Macy's Retail Holdings, Inc., 2010 U.S. Dist. LEXIS 29544, at *22 (S.D.N.Y. Mar. 29, 2010). Summary judgment should be granted as a matter of law.

Even assuming, for purposes of this motion for summary judgment, that the decision to terminate Plaintiff was made in February 2009 as Plaintiff alleges in her opposition[3], this *predates* her deposition in the Robles case – which is when she claims "everything changed" - and her October 2010 termination. See Pl. Mem. at 6 ("Mrs. Baldwin had a cordial interpersonal relationship with Russo until her deposition in the Robles matter. After that, everything changed…Herman also began treating Mrs. Baldwin more harshly after her deposition in the Robles matter"); see also Pl. Mem. at 7-8, 16; 56.1 ¶¶ 104-113.

In addition to the large temporal gap, Plaintiff offers no admissible evidence from which causation could be inferred. It remains undisputed that:

- Russo never threatened to fire Plaintiff or cut her pay if she did not keep Russian tenants out of Phelps House, nor was her pay or vacation ever docked, (56.1 ¶ 30), and Plaintiff did not interpret Russo's directive to pass over Russian applicants as a threat. (56.1 ¶ 31)
- Plaintiff ignored Russo's "directive" to pass over Russian applicants, (56.1 ¶ 32), and selected at least five Russian prospective tenants after Russo instructed her to pass over prospective Russian tenants. (56.1 ¶ 33)
- Neither Herman nor Uy ever instructed Plaintiff to pass over Russian applicants, (56.1 ¶ 34), and Herman told Plaintiff to continue doing what she was doing. (56.1 ¶ 35)
- Russo never asked Plaintiff about her alleged support of Robles or otherwise raised the topic of her alleged support of Robles with her, nor did he ever

---

[3] Plaintiff cannot dispute that between the summer of 2010 and September 13, 2010, Herman concluded that Plaintiff was unable to carry out her duties and responsibilities as Property Manager of Phelps House and should be terminated. See Defendant's Reply to Plaintiff's Response to Statement of Material Facts ¶57.

5

- approach Plaintiff to discuss the Russian applicants that were selected or question her as to why she was not following his directive to pass over prospective Russian tenants. (56.1 ¶ 21, 29)
- No one at GRCC ever brought up the issue of Plaintiff's statement to the insurance company to Plaintiff during her employment at GRCC. (56.1 ¶ 18)
- Neither Uy, Herman nor anyone else in GRCC management ever discussed Plaintiff's support of Robles with her. (56.1 ¶ 22)
- GRCC has an established Equal Employment Opportunity policy that prohibits retaliation and contains a complaint procedure, (56.1 ¶ 24), and Plaintiff did not make any complaints to HUD or any other agency about Russo's alleged directive pass over prospective Russian tenants. (56.1 ¶¶ 24, 25)
- Herman, with consultation from Uy – neither of whom were working for Defendant when Robles was terminated - made the decision to terminate Plaintiff and Uy did not solicit Russo's approval for this decision, nor did Russo express approval that Plaintiff should be terminated. (56.1 ¶¶ 6, 7, 60-62)

As set forth above, in the face of these undisputed facts Plaintiff offers conclusory allegations, inadmissible evidence, and conjecture that she was terminated in retaliation for protected activity that occurred years earlier.[4] Plaintiff attempts to bridge the enormous temporal gaps by claiming she was subjected to an "ongoing pattern of retaliation beginning in the Fall of 2008" consisting of: (1) discrete, isolated and unrelated incidents – of which she never complained about to anyone in GRCC management and are not adverse employment actions in any event, see Def. Brief at p. 9, fn. 4 – such as feeling ostracized, sensing coldness, not being given credit for her alleged accomplishments, and the like; (2) a new claim that as part of this

---

[4] Plaintiff tries to salvage her retaliation claims by relying on case where the temporal gaps were not fatal to the retaliation claim. Those cases, however, are distinguishable. For example, Curcio v. Roosevelt Union Free School District, 2012 WL 3646935 (E.D.N.Y. Aug. 22, 2012), involved a plaintiff that received negative evaluations and did not receive tenure. In finding that the temporal gap between protected activity and the adverse employment action did not defeat causation, the court held the "passage of time must be viewed in the context of this particular case…" The court explained the reason for the temporal gap by stating that plaintiff only received evaluations at the end of the school year and was not considered for tenure until the end of the three year probationary term. Id. at *15. Similarly, Tomlins v. Wappinger Falls Zoning Board of Appeals, 812 F. Supp. 2d 357 (S.D.N.Y. 2011), involved a claim by plaintiff landowner alleging retaliation by a zoning board authority in retaliation for bringing First Amendment claims. The case had nothing to do with employment.

6

alleged "pattern of retaliation" Herman transferred Plaintiff's duties to Grenadier, thereby reducing her responsibilities to mere "grunt work," and (3) a purely speculative new argument that Defendant decided to terminate her employment in February 2009 but *may* have bided its time -1½-5 years and over different supervisors – to terminate her.

Plaintiff offers no admissible evidence that the discrete, isolated incidents she complains of – even if they are adverse employment actions, which they are not, and which are time-barred, see Def. Brief at 8-9 - bear a causal link to any protected activity. See Redd v. New York State Division of Parole, 2012 U.S. Dist. LEXIS 186704, at *48 (E.D.N.Y. Dec. 20, 2012) (granting defendant summary judgment on plaintiff's Title VII, NYSHRL, and NYCHRL retaliation claims and holding "even assuming that all of the actions [plaintiff] mentions would constitute separate protected activities and that [defendant] were aware of them at the pertinent times, these events all took place…more than a year before [plaintiff's] actual termination…") Moreover, even if true, such trivial incidents of perceived slights can hardly constitute retaliation under any standard. See Melman, 98 A.D.3d at 126 ("To the extent plaintiff emphasizes that he subjectively felt 'humiliated,' 'degraded' and 'isolated' by the perceived slights of [Defendant's executives], … 'mere personality conflicts must not be mistaken for unlawful discrimination, lest the antidiscrimination laws become a general civility code.'").

Plaintiff's new claim that her responsibilities were reduced to "grunt work" fares no better. First, as set forth above, Plaintiff may not raise new claims for the first time in her affidavit at this late stage of the proceedings. Further, Plaintiff offers no admissible evidence to

support her conclusory claim that her responsibilities were reduced to "grunt work"[5] and the record evidence establishes that: (1) Plaintiff remained Property Manager at Phelps House, and was responsible for, among other things, filing required certifications, including tenant income certifications and certifications of tax credits, with HUD, (56.1 ¶ 2-3); (2) Plaintiff had responsibilities for leasing and monitoring the physical state of Phelps House, as well as for the overall care of the entire building (56.1 ¶ 5); (3) she supervised the superintendent and maintenance staff; (56.1 ¶ 4-5); and (4) Herman looked to Plaintiff to be responsible for such matters, as well as for the supervision of Rankin (56.1 ¶ 44) (Herman reminded Plaintiff that that "the buck stops with you, then with me...."). Simply put, there is no admissible evidence that Plaintiff's duties were reduced to "grunt work" or that the transfer of discrete tasks to Grenadier was motivated by retaliatory animus. Further, there cannot be an inference of retaliation where, as here, Plaintiff's responsibilities were diminished (if at all) because she did not perform her duties to GRCC's expectations. Ashton v. Pall Corp., 32 F. Supp. 2d 82, 90 (E.D.N.Y. 1999)("[i]n light of Plaintiff's failure to perform his position in a manner consistent with his employer's expectation, it was reasonable for Pall to reduce Plaintiff's responsibilities and to employ others in his stead.").

---

[5] Plaintiff relies on her own affidavit to support her conclusory allegation that "Grenadier became the face of Phelps House instead of me" and "[b]y the end of my employment, a lot of my day-to-day was reduced to doing grunt work for Grenadier." Plaintiff's Ex. 8, Baldwin Affidavit ¶34. When asked at her deposition what actions of GRCC constituted retaliation, Plaintiff did not testify that Grenadier became the face of Phelps House or that her work was reduced to grunt work in sum or substance. Indeed, Plaintiff testified exhaustively at her deposition about each alleged act of retaliation that she allegedly encountered, and stated that she had testified to every such instance (Pl. Dep. 122:5-6; 372:17-22, attached as Ex. T to the Tiliakos Reply Declaration) and this allegation was never mentioned nor was it alleged in her complaint.

Finally, Plaintiff's theory that Defendant had "good reasons" to delay terminating her is the sort of speculation, conjecture and conclusory argument without any record evidence that is rampant throughout Plaintiff's papers and cannot defeat summary judgment.[6] See *supra*.

### III.     THERE IS NO EVIDENCE OF PRETEXT

Plaintiff does not – nor can she - dispute that GRCC had a legitimate, non-retaliatory reason for terminating her: Plaintiff was not meeting Herman's expectations. See 56.1 ¶¶ 36-59. Plaintiff acknowledges the work issues that led Herman and Uy to terminate her employment, including that she did not always do her job "to the standard that others might wish from [her]." (56.1 ¶69).[7] Plaintiff's disagreement in how she was managed, or that she was not placed on a Performance Improvement Plan or disciplined prior to her termination does not establish pretext. O'Sullivan v. New York Times, 37 F. Supp. 2d 307, 308 (S.D.N.Y. 1999) ("[t]he laws prohibiting discrimination in employment were not intended to transform the courts into personnel managers."). Melman, 98 A.D.3d at 120-121 (Plaintiff "must do more than challenge the employer's decision as contrary to sound business or economic policy…it is not for the Court to decide whether the complaints against plaintiff were truthful or fair, as long as they were made in good faith").

---

[6] Plaintiff compares the instant case to Meyers v. Medco Health Solutions, Inc., 2012 WL 4747173 (S.D.N.Y. Oct. 4, 2012). In that case, plaintiff worked closely with defendant's lawyers in connection with a lawsuit brought against defendant. Id. at *9. The court held "a reasonable jury could conclude that the temporal gap between the plaintiff's complaints…and her termination was attributable to [defendant]'s desire that plaintiff continue to cooperate in the [lawsuit]." Id. Here, there is no admissible evidence to support Plaintiff's unfounded theory that GRCC strategically allowed her to remain employed so that she could cooperate in the Robles case, in particular where, according to Plaintiff, far from cooperating with GRCC, she supported Robles in his lawsuit *against* GRCC.

[7] Plaintiff's denial in response to Defendant's 56.1 Statement does not actually deny this (and other) admissions contained in her January 24, 2011 letter to GRCC's Executive Committee, but instead attempts to explain these admissions.

Nor can Plaintiff establish pretext through her explanations and excuses for her work deficiencies, see McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997)(plaintiff's rationalizations of his performance deficiencies did not raise material fact regarding employer's explanation that he was fired for unsatisfactory performance), or through her subjective beliefs regarding her abilities.[8] See Crawford-Mulley v. Corning Inc., 194 F. Supp. 2d 212, 221 (W.D.N.Y. 2002)(favorable past performance does not establish pretext); Loucar v. Boston Mkt. Corp., 294 F. Supp. 2d 472, 480 (S.D.N.Y. 2003)(" plaintiff's personal opinion of her performance neither creates an inference of discrimination nor constitutes evidence of pretext")(quoting Crawford-Mulley, 194 F. Supp. 2d at 221-22).

Finally, even assuming the decision to terminate Plaintiff was made in February 2009 (i.e., before her deposition in the Robles case), this only serves to highlight that Defendant had concerns with Plaintiff's performance since at least February 2009. See 56.1 ¶ 44. That Defendant sought to rehabilitate Plaintiff's performance issues and work with her to improve can hardly be retaliatory. See Littman v. Firestone Tire & Rubber Co., 709 F. Supp. 461, 467 (S.D.N.Y. 1989) (granting defendant summary judgment on plaintiff's Title VII claims where plaintiff was offered chances to improve his performance).

## CONCLUSION

For the foregoing reasons, the Court should grant GRCC's motion for summary judgment, dismiss each of Plaintiff's claims, with prejudice, and grant such other relief as the Court may deem just and proper.

---

[8] Plaintiff's argument that because Herman was the "alleged harasser," GRCC cannot rely on her perception of Plaintiff's performance lacks merit. Unlike in Ibok v. Securities Industry Automation Corp., 369 Fed. Appx. 210, 213 (2d Cir. 2010), this is not a harassment case and there are no previous allegations that Herman was Plaintiff's "harasser."

10

Dated: April 12, 2013
New York, New York

                        Respectfully submitted,

                        DUANE MORRIS LLP

                        By: _____
                        Michael Tiliakos
                        mtiliakos@duanemorris.com
                        Eric W. Ruden
                        eruden@duanemorris.com
                        1540 Broadway
                        New York, NY 10036-4086
                        Tel.: (212) 692-1000
                        Fax.: (212) 692-1020